# Richmond

MARGARET M. SOMERS, IN HER OWN RIGHT AND ELMER W.
SOMERS, HER HUSBAND V. VIRGINIA-CAROLINA JOINT
STOCK LAND BANK, ETC., ET AL.

April 21, 1941.

Record No. 2358.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and
Spratley, JJ.

432

*Ernest Ruediger* and *J. Brooks Mapp*, for the appellants.

*W. A. Worth* and *H. Ames Drummond*, for the appellees.

Spratley, J., delivered the opinion of the court.

The principal and determinative question on this appeal is primarily one of fact. It is whether a definite written agreement was subsequently modified or altered.

The Virginia-Carolina Joint Stock Land Bank, a federal farm loan bank, hereinafter referred to as the bank, on May 1, 1925, made two loans to W. H. Hickman, Sr., and wife and W. H. Hickman, Jr., and wife, for the aggregate sum of $40,000. The Hickmans executed as security therefor two deeds of trust covering four tracts or parcels of farm land in Accomack county. Each loan was evidenced by a note payable to the bank under an amortization plan providing for sixty-six equal semi-annual installments, the first installments maturing November 1, 1925. The semi-annual installments payable on both loans amounted to $1,398.88.

At a foreclosure sale, under another deed of trust executed subsequent to the deeds securing the bank, the equity of the Hicksmans in the four farms was sold and conveyed by Elmer W. Somers, trustee, to his wife, Margaret M. Somers. The deed of conveyance expressly recited that it was made subject to the prior liens of the Virginia-Carolina Joint Stock Land Bank.

In the fall of 1937, the Hickmans' amortization installments were in default in excess of $11,000, and the bank gave notice to Mrs. Somers of its intention to foreclose under its deeds of trust.

Somers and his wife had a considerable investment in the farms, and thought that they had a much greater potential value than the amount of the liens against them. To avoid or postpone foreclosure proceedings, Somers, an experienced attorney at law, entered into negotiations with the bank. The bank was willing to make some concessions in order to escape a threatened greater loss through an immediate sale. As a result of the negotiations, Somers made the following written proposal to the bank:

"November 9, 1937.
"Virginia-Carolina Joint Stock Land Bank,
Elizabeth City, N. C.

Dear Sirs:
"Herewith I am handing you the following:

"1. My note for $5,000, dated October 1, 1937, payable to your order, and due one year after date, and to which note is attached the collateral therein called for.

"2. My note for $5,000.00, dated October 1, 1937, payable to your order, and due in installments of $2,000.00 October 1, 1939, $2,000.00 October 1, 1940, and $1,000.00 October 1, 1941, and to which is attached the collateral therein called for.

"The above notes, when paid, are to be in full settlement and satisfaction of all installments of principal and interest up to January 1, 1937, and all taxes up to

January 1, 1937, on those certain farms in Accomac County, Virginia, known as the Hickman farms and which are now covered by deeds of trust for the benefit of the Virginia-Carolina Joint Stock Land Bank, and given by William H. Hickman, Sr., and wife and William H. Hickman, Jr., and wife.

"I have already paid $2,000 on the installments due for the year 1937, and agree to pay $1,000.00 additional by the first day of January, 1938, which $1,000.00, when paid, and the aforesaid $2,000.00, shall be in settlement of installments due on said farms for the year 1937.

"I will, also, by the first day of January, 1938, pay all taxes due on the said Hickman farms for the year 1937.

"From the first day of January, 1938, on I am to pay all taxes due on the said Hickman farms for the year 1937.

"From the first day of January, 1938, on I am to pay all installments on said Hickman lands as they become due; and to pay all taxes as they become due; and to keep the buildings on said Hickman lands insured as provided by the aforesaid deeds of trust, pay the premiums on said policies as they become due and deliver said policies to you; and I am otherwise to comply with the terms and conditions of the aforesaid deeds of trust to the same extent as the makers thereof were and are bound to do.

"If I should make default in the payment of installments, taxes or insurance premiums; or in any of the other conditions of said deeds of trust, from and after January 1, 1938, you would of course have your right of foreclosure, and if I should make default in any of the conditions of either of the two $5,000.00 notes enclosed herewith you will, of course, then have your right of foreclosure, provided, however, if I have fulfilled my obligations maturing after January 1, 1938, with respect to payment of installments, taxes and insurance and any other conditions imposed by the said deeds of trust, you are not to foreclose under your deeds of trust because

of default in either of said $5,000.00 notes until you have exhausted the collateral attached to said notes.

"Should it become necessary for you to foreclose either of the deeds of trust on said Hickman lands, I am not to participate in any of the proceeds arising from such sale or sales until your indebtedness against said lands has been paid in full.

"I will immediately have sent to you the mortgage securing the William J. West bond, and the Bill of Sale and Vendor's Liens covering the Marion A. Taylor and P. L. Baylis timber bonds; and will also have sent to you a copy of the instruments securing the payment of the Accomack Hotel bond, dated March 1, 1932.

"In addition to the above I will have sent to you a certificate of title as to the Maryland property, both land and timber, which is security for the West and the Taylor and Baylis obligations, showing that the bonds enclosed are secured by first lien.

"If the foregoing is acceptable to you, will you kindly so advise me or, if you prefer, endorse your acceptance on a copy of this letter which I will treat as an obligation.

"Yours very truly,

"Elmer W. Somers."

Before the proposal was accepted, the bank ascertained that there were additional delinquent taxes against the land. After acquainting Somers with this fact, both in person and by letter, the bank, through its president, W. J. Gaither, on December 7, 1937, sent the following telegram to him:

"YOUR PROPOSAL NOVEMBER NINTH HICKMAN PROPERTY APPROVED TODAY PLUS YOUR ASSUMPTION TAXES FIFTEEN HUNDRED TWENTY SEVEN DOLLARS AS YOU AGREED WITH SAWYER STOP UNABLE REACH YOU ON PHONE"

Somers and the bank thereupon treated the letter of

November 9, 1937, and the telegram in approval thereof, as their contract. The foreclosure proceedings contemplated by the bank were postponed, and Somers executed and delivered the notes described in his proposal. He also delivered a portion of the required collateral and his note of $1,527.84, for the delinquent taxes mentioned in the telegram.

The terms of the proposal and its acceptance are clear, definite and express. A contract was made which needs no interpretation, it speaks for itself. It provided simply that if Somers complied with the terms of his proposal and made the payments specified, then, and only then, the delinquent matured amounts due on the Hickman loans prior to January 1, 1938, should be deemed satisfied, and, in such event, Somers or his wife could satisfy the unmatured portion of the loans by making payment thereof when and as the same became payable under the terms of the deeds of trust; but that if there was any default in the obligations or conditions assumed by Somers, or in the payment of the unmatured portion of the loans accruing after January 1, 1938, when and as it became due, the right of the bank to foreclose, in accordance with the terms of the deeds of trust, was preserved to it. In the event of default and consequent foreclosure, no credit was to be allowed to Somers from the proceeds arising from the sale or sales of the lands for payments made by him until the indebtedness held by the bank against the lands had been paid in full.

Counsel for the plaintiffs in error concede that the terms of the contract are clear. They admit that Somers made default thereunder. They contend that its terms and provisions were modified by subsequent correspondence between the parties, whereunder the bank accepted the notes and collateral of Somers in satisfaction of the delinquent installments knowing that Mrs. Somers also had that understanding. They also further concede that unless the contract of November 9, 1937, was so amended

or modified, the plaintiffs in error are not entitled to relief in equity.

The bank received from Somers checks of Mrs. Somers in payment of the semi-annual installments due May 1, 1938, and November 1, 1938, without any controversy between the parties as to the terms of the contract.

Considerable correspondence passed between Somers and the bank with reference to the payment due May 1, 1939. The check of Mrs. Somers sent in payment of that installment was exchanged between the parties several times. The bank, on May 2nd, returned the check on account of incorrect balances stated in Somers' letter of April 29th. On May 4th, Somers returned the check in a letter in which he stated that he had put up his notes and collateral in full compromise settlement of all past due installments owing to the bank. On May 6th, the bank returned the check, stating that they were unwilling to accept same, except in accordance with the agreement of November 9, 1937.

Its letter further set out:

"We believe if you will read the third paragraph of the agreement to which you refer, dated November 9, 1937, that this will clear up the entire difficulty. You turned over to us certain notes which, the agreement provides, were to be credited on the Hickman loans WHEN PAID. The additional notes, as you already know, have not been paid and therefore have not been credited on the Hickman loans."

In response to Somers' request of May 17th, for a copy of his contract, the bank sent him a copy on May 18th. Thereafter, on May 20th, Somers again returned the check to the bank, and wrote the bank acknowledging receipt of a copy of the contract, saying further that he did not recall any other agreement.

On May 26th, Somers wrote that the last mentioned check had nothing to do with the compromise settlement between him and the bank, and that he expected to carry out his agreement and make all payments as provided

in his contract of November 9, 1937. Before the receipt of this letter, the bank, on May 27th, returned Mrs. Somers' check, saying that it would not be accepted under the terms and conditions of Somers' letter of April 29th, as the figures in that letter did not show the correct unpaid balances; but that it would be willing to accept it only in accordance with the agreement of November 9, 1937. These last two letters crossed each other in the mails, and on June 7th, the bank wrote that it would be willing to accept the check in accordance with Somers' letter of May 26th. On June 12th, Somers acknowledged receipt of the letter of the 7th, and returned the check to the bank. In this letter he stated "Of course, this has nothing to do with the past due installments which were settled between your bank and me with collateral on November 9, 1937." In reply to this letter, the bank, on June 13th, wrote that they were anxious to avoid any complications with respect to the payment of the May 1st installment, and added "For that reason we cannot accept check in accordance with your letter of June 12, 1939." It asked that Somers either write a letter to the effect that the check was given in accordance with his letter of May 26, 1939, or that he evidence his approval of that letter by endorsement thereon. On this letter of June 13th, is found the following endorsement: "It will be satisfactory to accept the check as per my letter to you of May 26, 1939. (Signed) Elmer W. Somers."

Throughout all the correspondence, the bank steadfastly insisted that it would not accept any of the semi-annual installments except upon the terms of the contract of November 9, 1937. In the letter of May 26th, Somers specifically stated that he would carry out his agreement made under that date. While there appears to be some suggestion on the part of Somers that he understood that the execution of his notes and the delivery of his collateral therefor was in full settlement of the delinquent installments and taxes prior to January 1, 1938, it is perfectly clear that the contract of November 9, 1937,

expresses no such understanding, nor does counsel for Somers contend that the contract so provides. It is also clear that there is no evidence of any thought on the part of the bank that the contract so provided, or that it, at any time, intended to modify or alter the original contract. The letter of Somers of May 26, 1939, expressly recognizes and affirms the contract of November 9, 1937, and Somers, by his endorsement on the bank's letter of June 13, 1939, agreeing to accept the check, concurs in the position taken by the bank.

. After the payment of November 1, 1939, became due, Somers, on November 24, 1939, tendered to the bank Mrs. Somers' check in payment of the November 1, 1939, installment. The bank, without endorsing this check, had it certified; but refused to accept and cash it, when Somers declined to permit its proceeds to be applied in accordance with the contract of November 9, 1937. Subsequently the certified check was returned to Somers without the endorsement of the bank.

In the meantime, Somers had made the following defaults under the terms of his contract of November 9, 1937: (1) He had failed to pay his $5,000 note due October 1, 1938, or the interest thereon, or any part thereof. (2) He had failed to pay the $1,000 due January 1, 1938, except $400, which came from timber sold from the mortgaged property. (3) He had failed and refused to send to the bank the mortgage securing the West farm, which mortgage he had, prior to his agreement, assigned to another, who later foreclosed thereunder. (4) He had failed to pay the installment of $2,000 due on October 1, 1939, or any interest thereon, or any part thereof.

The bank liquidated the collateral in accordance with the terms of the contract, and realized therefrom approximately the sum of $3,800, leaving a balance due from Somers, exclusive of interest, of at least $6,200.

The bank and Somers being unable to reach any satisfactory settlement, the bank advised Somers to have

his wife undertake to refinance the loans on the farms. This she was unable to do.

In this state of affairs, being unable to reach any other satisfactory settlement, the bank requested the Southern Loan & Insurance Company, trustee under the two deeds of trust from the Hickmans, to make sale of the properties in the said deeds of trust. The trustee, on January 15, 1940, advertised the properties for sale.

Mrs. Somers and her husband thereupon filed their bill against the defendants in error for an injunction against a foreclosure under the deeds of trust and for an accounting by the bank. The bank filed its answer denying the material allegations of the bill. A temporary injunction was granted until April 1, 1940.

Voluminous evidence was taken, and the trial court, on May 30, 1940, entered its final decree annulling and dissolving the temporary injunction. That court adjudged that the bank had the right to subject the said farm lands to the payment of its debt, and appointed Ernest Ruediger and H. Ames Drummond special commissioners for the purpose of making sale thereof. It further ordered that the bank forthwith assign the certified check of November, 1939, to Margaret M. Somers, the owner thereof.

The evidence which we have herein related fully sustains the finding and decree of the trial court. We find no real conflict in the evidence. Neither the language of the contract nor the letters between the parties affords any basis for the claim that the acceptance of the notes and collateral of Elmer W. Somers were in full payment and satisfaction of the delinquent installments and taxes. The only conflict, in any respect, is in a suggested interpretation which Somers sought to put on his contract and his transactions with the bank,—an interpretation not supported by the plain language of the contract or by the course of conduct between the parties.

Somers made no real claim before the suit was brought

that the contract of November 9, 1937, had been altered or amended.  It is true that he suggested in his correspondence with the bank that his obligations had no relation to the obligations of Mrs. Somers, and that whether he took care of his notes or not, Mrs. Somers could redeem her property by making payment of the unmatured installments as they became due.  This suggestion was promptly rejected by the bank and, in turn, withdrawn by Somers.

There is nothing in the record as to acts or course of conduct upon which the principles of estoppel or novation can be based.

Mrs. Somers appears to have been represented in all of these proceedings by her husband.  She took the property conveyed to her subject to the liens held by the bank.  She assumed no personal obligation to pay the liens, nor did she endorse the notes of her husband or join in his contract.  She did not even testify in the case.

The defendants in error assign cross-error to the refusal of the trial court to direct the trustee under the two deeds of trust from the Hickmans to make sale of the lands involved.

The trustee is a foreign corporation, not domesticated to do business in Virginia, and not shown to have any representative or agent in Virginia.  It has no vested rights in the enforcement of the trust.

Under the peculiar circumstances of this case, the trial court, in the exercise of its discretion and its right to supervise the sale, appointed one of creditor's counsel and one of debtor's counsel as agents of the court and as special commissioners to make the sale.  We are unable to say that it abused its discretion or the exercise of its power.  It may well be that it was advisable to have the sale effected by resident agents of the court, who had a peculiar knowledge of the property and of the interests of all the parties involved.  There is no merit in the

cross-error. *New York Life Insurance Company* v. *Kennedy*, 146 Va. 197, 135 S. E. 882.

The final decree of the trial court is plainly right, and it is affirmed in all respects.

*Affirmed.*